Venice HAMES and Angela Hames, h/w and Kiara Hames, a minor, by her parents and natural guardians, Venice and Angela HAMES, and Venice and Angela Hames in their own right and Venicia Hames, a minor, by her parents and natural guardians, Venice and Angela Hames, and Venice and Angela Hames in their own right, Appellants,

v.

The PHILADELPHIA HOUSING AUTHORITY.

Commonwealth Court of Pennsylvania.

Argued May 18, 1999.

Decided Sept. 2, 1999.

William E. Averona, Philadelphia, for appellants.

Amy R. Snell, Philadelphia, for appellee.

Before SMITH, J., PELLEGRINI, J., and RODGERS, Senior Judge.

SMITH, Judge.

Venicia and Kiara Hames, by their parents Venice and Angela Hames (collectively, Appellants), appeal from the May 8, 1998 order of the Court of Common Pleas of Philadelphia County granting summary judgment to the Philadelphia Housing Authority (Authority) in Appellants' tort action arising from an automobile collision. This matter was previously before the Court in *Hames v. Philadelphia Housing Authority*, 696 A.2d 880 (Pa.Cmwlth.1997) (*Hames I*), wherein the Court vacated a prior order of the trial court granting summary judgment to the Authority and remanded for the trial court to consider a psychiatrist's reports concerning evaluations of the minor Appellants.

## I

The Court required the trial court on remand to consider any opposing affidavits along with the pleadings, answers to interrogatories, depositions and admissions filed of record. The Court further determined that the minor children were bound by their mother's deemed election of the limited tort option under Section 1705(a)(5) of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1705(a)(5). An individual who elected a limited tort option may not recover compensation for noneconomic loss sustained in a motor vehicle accident unless the individual sustained a "serious injury." Section 1705(d) of the MVFRL, 75 Pa.C.S. § 1705(d). Appellants question whether the trial court erred in ruling through summary judgment that Kiara and Venicia Hames' claims for noneconomic damages should be dismissed and whether the matter is subject to remand for a jury trial under the decision in *Washington v. Bax-*

*ter*, 553 Pa. 434, 719 A.2d 733 (1998).[1] In *Washington* the Supreme Court established the standard for determining the threshold question of whether a plaintiff has suffered a serious injury within the meaning of Section 1702, *as amended*, 75 Pa.C.S. § 1702, and within the meaning of Section 1705(d).

The reports considered by the trial court on remand were prepared by Dr. Clancy D. McKenzie, psychiatrist. His report concerning Venicia Hames, based upon three evaluation and treatment sessions with her in October 1995 and February and March 1996, stated that she was riding in the back seat behind her father when their vehicle collided with the van. She suffered a blow to the head as well as ankle and leg injuries, and she was unconscious for 10 to 15 minutes. She continued to suffer among other things blurred vision and double vision, headaches accompanied by nausea and dizziness once or twice a week, vertigo and hearing loss. The report recommended neurological testing, along with neuro-opthamalogical and neuro-otologic examinations, an MRI if none had been performed and continued neuropsychiatric care. Dr. McKenzie stated that Venicia exhibited signs and symptoms of potentially serious injuries to her brain.[2] Dr. McKenzie's report for Kiara, based upon the same evaluation and treatment

dates, stated that she flew out of the seatbelt in the crash and broke the windshield with her head and that she was unconscious for 5 or 10 minutes. In addition to a head injury, she complained of neck and lower back pain, and she experienced difficulty with balance and daily vertigo, blurred vision and headaches. The doctor recommended evaluation and treatment similar to that for Venicia.[3]

The trial court on remand again granted summary judgment in favor of the Authority. Following the October 1998 decision of the Supreme Court in *Washington*, the trial court issued an opinion in November 1998 in support of its order. The trial court concluded that its grant of summary judgment was in error and that this case is one in which reasonable minds could differ as to whether the children's injuries were serious under the MVFRL. The court reversed itself on this point, but it nevertheless examined the evidence proffered by Appellants and concluded that they had not shown that Dr. McKenzie was qualified to render his diagnoses and that his opinions were founded upon inadequate histories provided by the children and their parents without any objective medical basis. The court determined that Appellants' evidence likely would not

1. The factual history of this case is contained in *Hames I*. Briefly, however, this case involves injuries sustained by the minor Appellants in an accident in May 1992 in which an uninsured Plymouth Voyager registered to Angela Hames and driven by Venice Hames, with Kiara (age three) and Venicia (age six) as passengers, collided with a vehicle driven by an employee of the Authority that allegedly ran a stop sign. Appellants averred that Kiara's head broke the windshield and that Venicia was pinned under the seat for a period and that both children witnessed the injuries suffered by their father. The Authority resolved claims on behalf of Venice and Angela Hames, but the claims on behalf of the minor children remain. Appellants alleged late-developing psychiatric impairment of both children in addition to their initial trauma and psychological effects.

2. Dr. McKenzie's diagnoses for Venicia were: "(1) Postconcussional Disorder; (2) Posttraumatic Stress Disorder; (3) Symptoms of Major Depression; (4) Post Trauma Cephalgia; (5) Cochlear Concussion; (6) Probable Migraine Headaches; (7)[H]earing loss without tinnitius; (8) Must rule out Hydrocephalus." Report of Dr. McKenzie, April 18, 1996.

3. The diagnoses for Kiara were: "(1) Postconcussional Disorder; (2) Posttraumatic Stress Disorder; (3) Cochlear concussion, right ear; (4) Must rule out traumatic Glaucomoa in left eye; (5) Post Trauma Cephalgia; (6) Probable Posttraumatic Epileptic Seizures, complex partial or petit mal; (7) Possible Hydrocephalus as the cause of the enuresis and apraxic gate; [8] Must evaluate for TMJ related to the trauma." Report of Dr. McKenzie, April 18, 1996.

survive a motion in limine.[4]

## II

In *Washington* the Supreme Court addressed the question of the nature of a trial court's evaluation of a motion for summary judgment based on the contention that a plaintiff had not suffered a serious injury within the meaning of Sections 1702 and 1705(d) of the MVFRL. Section 1702 defines serious injury as "[a] personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." Section 1705(d) provides in pertinent part:

Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law. Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for any non-economic loss . . . .

The Supreme Court, overruling *Dodson v. Elvey*, 445 Pa.Super. 479, 665 A.2d 1223 (1995), *rev'd & rem'd*, 554 Pa. 245, 720 A.2d 1050 (1998), concluded that the legislature's intent behind enactment of the limited tort option was to require that the threshold determination of whether a serious injury has been sustained not be made routinely by a trial court judge. Rather, it is to be decided by the jury unless reasonable minds could not differ on the question. Further, the court adopted the analysis of "serious impairment of body function" employed in *DiFranco v. Pickard*, 427 Mich. 32, 398 N.W.2d 896 (1986), for an identical statute. The inquiry is limited to (a) which body function was impaired and (b) whether the impairment was serious. The focus is not on the injuries themselves but instead on how they affected a particular body function, with medical testimony generally required to establish the existence, extent and permanence of impairment. Impairment need not be permanent to be serious. *Washington.*

■ Appellants first summarize the testimony of Venicia and Kiara's mother concerning the ongoing effects of their injuries and also the decision in *Washington.* They argue that the trial court took a unique approach in this case, applying its own view of the weight of the evidence when under *Washington* this question should properly be decided by a jury. They contend that the Authority impermissibly seeks to have summary judgment entered on the basis of testimonial affidavits or depositions alone.[5] Appellants assert that under *Washington* the injuries need not be permanent or objective; they need only be serious, and the mother, father and doctor will testify to their nature and extent. Regarding their separate petition to remand for trial, Appellants assert that under the *Washington* requirement of considering "all relevant factors" as to whether an injury is serious, the decision of whether effects that allegedly persist to this day are related to the accident and are within the meaning of "serious injury" is for the jury.

---

4. In reviewing a summary judgment case, the Court must view the record in the light most favorable to the non-moving party; all doubts as to the existence of a genuine issue of material fact are to be resolved against the moving party. *Washington.* To withstand such a motion, the non-moving party must adduce sufficient evidence on a crucial issue as to which that party bears the burden of proof to show that a jury could return a verdict in that party's favor. *Id.* Summary judgment will be granted only in cases that are clear and free from doubt. *Davis v. Brennan*, 698 A.2d

1382 (Pa.Cmwlth.1997). Parties who seek to avoid summary judgment must show by specific facts in their depositions, answers to interrogatories, admissions or affidavits that there is a genuine issue of material fact for trial. *Sovich v. Shaughnessy*, 705 A.2d 942 (Pa.Cmwlth.1998).

5. The Authority notes that it attached copies of the children's medical records and reports to both its original and its later motions for summary judgment.

The Authority responds first by noting that even under *Washington* the threshold determination is "to be left to a jury *unless reasonable minds could not differ as to whether a serious injury had been sustained.*" 553 Pa. at 446–447, 719 A.2d at 740 (emphasis added). The Authority contends that, in view of the evidence that Appellants presented, this is one of those "clearest of cases" in regard to serious injury upon which summary judgment may properly be entered. The Authority quotes language from *Dodson* stating that to cross the "serious injury" threshold a plaintiff must show a dispute of material fact by objective medical evidence and that the impairment must be objectively manifested. It cites also the statement in *Dodson* that the consequences of an injury must have a serious impact for an extended period of time and must interfere substantially with the plaintiff's normal activities.

The Authority asserts that the emergency room records show that Venicia denied loss of consciousness and did not complain of headaches and that both she and Kiara were treated and released the day of the accident. The only treatment they received allegedly related to the accident was a two-month course of physical therapy from June until August 1992, and x-rays performed in 1992 were normal. Further, the Authority asserts that records of the children's treatment from 1992 to 1996 at the John F. Kennedy Health Center show only garden-variety childhood problems, with no indication that any complaints were related to the May 1992 accident. Regarding Dr. McKenzie's reports, the Authority asserts that they admit that he failed to perform any objective testing to attempt to substantiate the subjective complaints related to him by the children and their mother and that they show no treatment or prescribing of medication or referral to others for treatment or evaluation.

In addition, the Authority asserts that the medical records and Angela Hames' deposition show only that Venicia and Kiara's physical injuries resolved within months of the accident, that their physical injuries are not objectively manifested and that there is no evidence that any physical condition substantially interferes with their daily activities. As for any psychiatric injury, the Authority quotes the trial court's statement that there was no objective medical basis for Dr. McKenzie's numerous diagnoses. It alleges also that Angela Hames' testimony concerning her daughter's normal performance in school and in other childhood activities contradicts the doctor's reports on these points, and it asserts that allegations of psychiatric injury are not objectively manifested and contends that Appellants fail to focus on the impact of the injuries.

■ The Court observes first that the Supreme Court in *Washington* expressly adopted the *DiFranco* definition for serious injury, but the Supreme Court did not adopt the language from *Dodson* that objective medical evidence is required in order to cross the serious injury threshold. Rather, the standard adopted by the Supreme Court states that "[g]enerally, medical testimony will be needed to establish the existence, extent and permanency of the impairment...." *Washington,* 553 Pa. at 447, 719 A.2d at 740. Second, the Court does not accept the premise of the Authority and the trial court that Appellants did not present adequate medical testimony. The Court rejects the suggestion that a psychiatrist lacks the expertise to render diagnoses such as post-traumatic stress disorder or symptoms of major depression. Further, although Dr. McKenzie recognized the need for specific forms of testing to confirm certain diagnoses and to provide a basis for treatment, he did not state or imply that the diagnoses could not be rendered without testing.

The Authority's arguments, moreover, are contrary to the law regarding the grant or review of a motion for summary judgment. It points to conflicts or perceived conflicts in the various materials

that have been submitted, and its suggests that these conflicts should be resolved in its favor in order to undermine the reports of Dr. McKenzie. This argument, however, illustrates disputed issues of material fact that prevent entry of summary judgment and also fails to view the record in the light most favorable to Appellants as the Court must do. *Washington, Davis.* The Authority's contentions actually represent attacks upon the weight and credibility of the evidence from Angela Hames and her daughters and from Dr. McKenzie. These are matters that are for resolution in a trial; they may not be resolved on a motion for summary judgment. Therefore, the order of the trial court is reversed, and this case is remanded for trial.

## ORDER

AND NOW, this 2nd day of September, 1999, the order of the Court of Common Pleas of Philadelphia County is reversed, and this matter is remanded for further proceedings consistent with the foregoing opinion.

Jurisdiction is relinquished.