## Brislin v. Chiavacci

C.P. of Lackawanna County, no. 99-CV-456.

*Jack E. Feinberg,* for plaintiff.
*Eugene P. Feeney,* for defendants Kurtzer and Greentown.
*David W. Saba,* for defendants Chiavacci and Steindel et al.

CORBETT, *J.,* May 18, 2001—On April 14, 1999, plaintiff filed a complaint against the defendants alleging an injury as a result of the alleged malpractice of the defendants. Defendants have all filed answers and the parties have conducted extensive discovery. Defendants Y. Barry Kurtzer M.D., Greentown Medical Center, Eugene J. Chiavacci M.D. and Steindel, Malloy, Cronkey & Chiavacci all move for summary judgment alleging that plaintiff cannot raise genuine issues of material fact

as to the expiration of the statute of limitations. Therefore, all argue they are entitled to judgment as a matter of law. We have had the opportunity to review the record, as well as the submissions of the parties and we held oral argument on April 16, 2001.

## BACKGROUND

On or about July 26, 1996, the plaintiff was involved in a motor vehicle accident. Within a few days of the accident, she came under the care of defendant Y. Barry Kurtzer M.D. and defendant Greentown Medical Associates P.C. Plaintiff testified that she saw Dr. Kurtzer on one occasion approximately three days after her auto accident. (N.T. p. 50.) She alleges Dr. Kurtzer radiographed her left leg and informed her that nothing was wrong other than soft swollen tissue damage. (N.T. pp. 11, 20, 21.) As a result, plaintiff continued to work and further testified that following her visit with Dr. Kurtzer, she did not believe "there was anything wrong because I was told there was nothing wrong." (N.T. p. 20.) Plaintiff alleges that a physician's assistant from Kurtzer's office stopped into her place of employment and after seeing her swollen left knee caused Ms. Brislin to undergo an MRI. (N.T. p. 21.)

Plaintiff proceeded to have an MRI performed at Northeastern Pennsylvania Imaging Center and according to plaintiff's testimony, she was told by a person at Northeast that she did indeed have a fracture of her leg. (N.T. p. 22.) Plaintiff alleges, based on the findings of the MRI, that Dr. Kurtzer referred her to defendants Dr. Eugene J. Chiavacci and Steindel, Malloy, Cronkey & Chiavacci. (N.T. p. 22.) Plaintiff came under the care of

Dr. Chiavacci on or about August 8, 1996. Plaintiff had no other treatment, conversations or discussions with Dr. Kurtzer or anyone at Greentown after beginning treatment with Dr. Chiavacci. Plaintiff treated with Dr. Chiavacci from August 8, 1996, to November 21, 1996. Plaintiff testified that her first visit was a very brief visit wherein she was told she had a non-displaced fracture of the leg and that she was going to be put in a leg brace but did not need to be casted. (N.T. p. 23.) Subsequent thereto the plaintiff wore the leg brace and used crutches as well as attended physical therapy. Plaintiff alleges that Dr. Chiavacci discussed the possibilities of surgery with plaintiff but decided against it based on her Charcot joint. (N.T. pp. 26, 32.) Additionally, plaintiff claims that during her treatment with Dr. Chiavacci, she inquired why it was taking her leg so long to heal. (N.T. p. 26.) Plaintiff testified that Dr. Chiavacci informed her that her diabetes was slowing her healing process. (*Id.* pp. 26, 28.)

After treating with Dr. Chiavacci until November 1996, plaintiff decided to get a second opinion and came under the care of Dr. Harry Schmaltz on December 10, 1996. Dr. Schmaltz immediately casted plaintiff's leg. Plaintiff avers that the doctor offered no explanation or comments to the plaintiff as to why her leg had not been previously casted, however, he believed the cast would be a good idea. (N.T. p. 29.) On March 5, 1997, the plaintiff's cast came off and the fracture was healed. (*Id.* p. 30.) Plaintiff avers that after the cast came off her leg had bowed to the side as a result of which she had to have corrective surgery on May 15, 1997. Post surgery, the plaintiff claims her leg was still unstable and Dr. Schmaltz considered doing a left knee replacement but

decided against it due to plaintiff's Charcot joint. (N.T. p. 32.)

Plaintiff next came under the care of Dr. Johanson from Temple University at the request of her insurance carrier given the protracted nature of the plaintiff's treatment. Plaintiff alleges that Dr. Johanson determined that plaintiff had no Charcot joint and performed a knee replacement on September 16, 1998, and October 1998. (N.T. pp. 32-33.) Plaintiff claims that Dr. Johanson was the first to inform her that the reason for the delay in her healing was because of inadequate care in the beginning of her condition. (N.T. p. 37.) Up until that time she alleges she believed the doctor when he told her that her healing was delayed due to her diabetes. (N.T. p. 26, 28, 41 and 44.) With respect to the treatment of the plaintiff by Dr. Schmaltz and Dr. Johanson, both doctors have yet to be deposed in this matter.

Defendants have filed for summary judgment arguing that the plaintiff's case is time barred because she did not begin her action until January 29, 1999, more than two years and eight months after her first visit with Dr. Kurtzer and more than two years after her last visit with Dr. Chiavacci. Plaintiff responds first that the discovery rule is applicable in this matter and secondly, that discovery is still ongoing. Since we have had the opportunity to review the record and the submissions and arguments of the parties, we will address these arguments below.

## DISCUSSION

A motion for summary judgment places the burden upon the moving party. The moving party must show

that there exists no genuine issue of any material fact for trial. Pa.R.C.P. 1035.2. The moving party must be entitled to judgment as a matter of law and the moving party has the burden of proving that no genuine issue of material fact exists. *Washington v. Baxter,* 553 Pa. 434, 440, 719 A.2d 733, 737 (1998). The court must examine the record in the light most favorable to the non-moving party and resolve all doubts against the moving party. *Id.* An entry of summary judgment is granted only in cases where the right is clear and free of doubt. *Accu-Weather v. Prospect Communications Inc.,* 435 Pa. Super. 93, 644 A.2d 1251 (1994). The moving party has the burden of proving the nonexistence of any genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Rapagnani v. Judas Co.,* 736 A.2d 666, 668 (Pa. Super. 1999). To withstand such a motion, the non-moving party must adduce sufficient evidence on a crucial issue as to which that party bears the burden of proof so as to demonstrate that a jury could return a verdict in favor of the non-movant. *Hames ex rel. Hames v. Philadelphia Housing Authority,* 737 A.2d 825, 828 n.4 (Pa. Commw. 1999).

In the instant matter, the defendants argue that they are entitled to summary judgment as the discovery rule is inapplicable and the plaintiff instituted her action more than two years after she knew or in the exercise of reasonable care should have known that she was injured as a result of either Dr. Kurtzer or Dr. Chiavacci's treatment. Plaintiff argues that she was unaware of the injury that the mistreatment caused until after she was told by Dr. Johanson. In the alternative, she argues that discovery is ongoing as Dr. Schmaltz and Dr. Johanson have yet to be deposed in this matter.

"It is the duty of the party asserting a cause of action to use all reasonable diligence to properly inform himself of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed period." *Kramer v. Dunn,* 749 A.2d 984, 987-88 (Pa. Super. 2000). (citations omitted) "However, in some circumstances, although the right to institute suit may arise, a party may not, despite the exercise of diligence, reasonably discover that he has been injured." *Id.* at 988. (citations omitted) In such cases the discovery rule applies. *Id.* "The discovery rule is a judicially created device which tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct." *Id.* "Pursuant to application of the discovery rule, the point at which the complaining party should reasonably be aware that he has suffered an injury is a factual issue 'best determined by the collective judgment, wisdom and experience of jurors.' " *Id.* (citations omitted) "Thus, once the running of the statute of limitations is properly tolled, only where the facts are so clear that reasonable minds *cannot differ* may the commencement of the limitations period be determined as a matter of law." *Id.* (emphasis in original)

In the instant matter, we find that although the plaintiff argues that the discovery rule tolls the statute of limitations, such is not the case as it pertains to Drs. Kurtzer and Greentown. Plaintiff testified in her deposition that after she had her MRI and began treating with Dr. Chiavacci, she was aware of the missed diagnosis by Dr. Kurtzer. Plaintiff began treating with Dr. Chiavacci on or about August 8, 1996. We find that the statute of limita-

tions as to Dr. Kurtzer and Greentown expired on August 8, 1998. As to Kurtzer's treatment we find the discovery rule inapplicable. Through her own testimony, plaintiff admitted that Dr. Kurtzer missed her fracture and that she became aware of this after the MRI and treatment with Dr. Chiavacci. (N.T. pp. 55 and 53.) As to any subsequent treatment by Dr. Chiavacci, we find that issue separate and distinct from the treatment rendered by Dr. Kurtzer. Therefore, the motion for summary judgment filed by defendants Kurtzer and Greentown is granted. There are no genuine issues of material fact as to when the plaintiff became aware of the missed diagnosis of Dr. Kurtzer. Defendants Kurtzer and Greentown are entitled to judgment as a matter of law.

As to the treatment rendered by Dr. Chiavacci, we find that genuine issues of material fact exist as to when the plaintiff should have become aware that she suffered an injury allegedly at the hands of Dr. Chiavacci. Testimony revealed that Dr. Chiavacci told the plaintiff that her diabetes was slowing her healing process. Additionally, although Dr. Schmaltz casted the plaintiff in December 1996, when Dr. Chiavacci had not since August of 1996, Dr. Schmaltz made no comments with regard to Dr. Chiavacci's treatment. Plaintiff testified that the first she was told that the treatment by Dr. Chiavacci was substandard was after beginning treatment with Dr. Johanson in 1997. We find this issue will best be decided by the jury in judging the credibility of the parties. In the alternative, since both Dr. Schmaltz and Dr. Johanson have not deposed in this matter we find that summary judgment is not appropriate at this time. Therefore, the mo-

tion for summary judgment filed by defendants Chiavacci and Steindel, Malloy, Cronkey & Chiavacci Ltd. is denied.

## ORDER

And now, May 18, 2001, upon consideration of the record in this matter all the submissions and arguments of the parties, it is hereby ordered and decreed consistent with the foregoing opinion that the motion for summary judgment filed by defendants Dr. Y. Barry Kurtzer and Greentown Medical Associates P.C., individually and trading as Greentown Medical Center is granted; the motion for summary judgment filed by Dr. Eugene J. Chiavacci and Steindel, Malloy, Cronkey & Chiavacci Ltd. is denied.